# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLEN KELLY, | : | CIVIL NO. 1:14-CV-2322 |
| | : | |
| Plaintiff, | : | (Chief Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| | : | |
| J.T. MERRILL, et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

This inmate motion for a preliminary injunction contains an extraordinary prayer for relief. The plaintiff, Allen Kelly, is a state inmate and a prodigious, if prodigiously unsuccessful, litigant. Indeed, by our count Kelly has had six prior lawsuits dismissed as frivolous, and has been denied leave to proceed *in forma pauperis* on at least three prior occasions due to his history of frivolous and feckless litigation.[1]

---

[1] See e.g., Kelly v. Kline, 1:10-CV-2658; Kelly v. Kemp, 1:11-CV-1099; Kelly v. Hauck, 1:11-CV-1221; Kelly v. York County Prison, No. 4:08-CV-2027; Kelly v. York County Prison, No. 4:08-CV-1813; Kelly v. York County Prison, No. 4:02-CV-700. See also Kelly v. Karnes, No. 10-2532, 2011 WL 5089819 (M.D.Pa. Sept. 1, 2011), Report and Recommendation Adopted, Kelly v. Karnes, No. 10-2532, 2011 WL 5117633 (M.D.Pa. October 25, 2011); Kelly v. Lebanon County Comm'rs, No. 11-1294, 2011 WL 745996 (M.D. Pa. Oct. 5, 2011), Report and Recommendation Adopted, Kelly v. Lebanon County Com'rs, No. 11-1294, 2012 WL 716038 (M.D. Pa. Mar. 5, 2012)(denying leave to proceed *in forma pauperis*).

On December 8, 2014, Kelly, a state prisoner who is proceeding *pro se*, commenced this lawsuit. (Doc. 1.) Kelly's 102-page complaint named 37 defendants spanning the entire Department of Corrections, and raised a far-reaching host of constitutional concerns relating to inmate discipline, denial of parole, access to legal resources, mail service, as well as alleged verbal harassment and intimidation by prison staff. (Id.) Along with his complaint Kelly has filed a motion for preliminary injunction, which is also breathtaking in its scope, and essentially calls upon the court to declare Kelly the victor in this lawsuit prior to commencement of this litigation. (Doc. 4.) Thus, in this motion Kelly would invite us to order prison officials to expunge his disciplinary records; grant him wide ranging access to legal materials; grant him parole; transfer him to general population; provide him with single cell accommodations; and provide him with mail, and legal paper privileges beyond those afforded to every other inmate in state prison at no cost to Kelly. (Id.)

For the reasons set forth below, it is recommended that this motion be denied.

## II.    Discussion

### A.    Preliminary Injunction Rule 65– The Legal Standard.

Inmate *pro se* pleadings, like those filed here, which seek extraordinary, or emergency relief, in the form of preliminary injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure and are judged against exacting legal standards.

As the United States Court of Appeals for the Third Circuit has explained: "Four factors govern a district court's decision whether to issue a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief, (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994) (quoting SI Handling Systems, Inc. v. Heisley, 753 F.2d 1244, 1254 (3d Cir. 1985)). See also Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 170-71 (3d Cir. 2001); Emile v. SCI-Pittsburgh, No. 04-974, 2006 WL 2773261, *6 (W.D.Pa. Sept. 24, 2006)(denying inmate preliminary injunction).

A preliminary injunction is not granted as a matter of right. Kerschner v. Mazurkewicz, 670 F.2d 440, 443 (3d Cir. 1982) (affirming denial of prisoner motion for preliminary injunction seeking greater access to legal materials). It is an extraordinary remedy. Given the extraordinary nature of this form of relief, a motion for preliminary injunction places precise burdens on the moving party. As a threshold matter, "it is a movant's burden to show that the 'preliminary injunction must be the only way of protecting the plaintiff from harm.' " Emile, 2006 WL 2773261, at * 6 (quoting Campbell Soup Co. v. ConAgra, Inc., 977 F .2d 86, 91 (3d Cir.1992)). Thus, when considering such requests, courts are cautioned that:

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (emphasis deleted). Furthermore, the Court must recognize that an "[i]njunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case." Plain Dealer Publishing Co. v. Cleveland Typographical Union # 53, 520 F.2d 1220, 1230 (6th Cir.1975), cert. denied, 428 U.S. 909 (1977). As a corollary to the principle that preliminary injunctions should issue only in a clear and plain case, the Court of Appeals for the Third Circuit has observed that "upon an application for a preliminary injunction to doubt is to deny." Madison Square Garden Corp. v. Braddock, 90 F.2d 924, 927 (3d Cir.1937).

Emile, 2006 WL 2773261, at *6.

Accordingly, for an inmate to sustain his burden of proof that he is entitled to a preliminary injunction under Fed.R.Civ.P. 65, he must demonstrate both a reasonable likelihood of success on the merits, and that he will be irreparably harmed if the requested relief is not granted. Abu-Jamal v. Price, 154 F.3d 128, 133 (3d Cir. 1998); Kershner, 670 F.2d at 443. If the movant fails to carry this burden on either of these elements, the motion should be denied since a party seeking such relief must "demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989)(emphasis in original), (quoting Morton v. Beyer, 822 F.2d 364 (3d Cir. 1987)).

These limitations on the power of courts to enter injunctions in a correctional context are further underscored by statute. Specifically, 18 U.S.C. §3626 limits the

authority of courts to enjoin the exercise of discretion by prison officials, and provides

that:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

> 18 U.S.C.A. § 3626(a)(1)(A).

With respect to preliminary injunctions sought by inmates, courts are also

instructed that:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity . . . in tailoring any preliminary relief.

> 18 U.S.C.A. § 3626(a)(2).

Furthermore, several other basic legal tenets guide our discretion in this

particular case, where an inmate: (1) seeks to enjoin a wide array of non-parties; and

(2) requests relief which goes beyond  merely preserving the *status quo* in this

litigation, but seeks to impose new, mandatory conditions on prison officials. Each of

these aspects of Kelly's prayer for injunctive relief presents separate problems and concerns.

For example, Kelly's proposed preliminary injunction would not simply apply to the named defendants in this lawsuit. It would also require a wide array of other prison officials to take affirmative steps to provide special housing, goods, and services to Kelly, along with expunging his past disciplinary citations, and forcing the state to grant Kelly favorable parole consideration. To the extent that Kelly seeks to enjoin non-parties in this litigation it is clear that: "[a] non-party cannot be bound by the terms of an injunction unless the non-party is found to be acting 'in active concert or participation' with the party against whom injunctive relief is sought. Fed.R.Civ.P. 65(d)." Elliott v. Kiesewetter, 98 F.3d 47, 56 (3d Cir. 1996). Kelly has made no such showing here.

Further, where the requested preliminary injunction "is directed not merely at preserving the *status quo* but...at providing mandatory relief, the burden on the moving party is particularly heavy." Punnett v. Carter, 621 F.2d 578, 582 (3d Cir. 1980). Mandatory injunctions should be used sparingly. United States v. Price, 688 F.2d 204, 212 (3d Cir. 1982). Thus, a request for some form of mandatory proactive injunctive relief in the prison context "must always be viewed with great caution because judicial

restraint is especially called for in dealing with the complex and intractable problems of prison administration." <u>Goff v. Harper</u>, 60 F.3d 518 (3d Cir. 1995).

In addition, to the extent that the plaintiff seeks a preliminary injunction with some enduring effect, he must show that he will be irreparably injured by the denial of this extraordinary relief. With respect to this benchmark standard for a preliminary injunction, in this context it is clear that:

> Irreparable injury is established by showing that Plaintiff will suffer harm that "cannot be redressed by a legal or an equitable remedy following trial." <u>Instant Air Freight Co. v. C.F. Air Freight, Inc.</u>, 882 F.2d 797, 801 (3d Cir.1989) ("The preliminary injunction must be the only way of protecting the plaintiff from harm"). Plaintiff bears this burden of showing irreparable injury. <u>Hohe v. Casey</u>, 868 F.2d 69, 72 (3d Cir.), <u>cert. denied</u>, 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989). In fact, the Plaintiff must show *immediate* irreparable injury, which is more than merely serious or substantial harm. <u>ECRI v. McGraw-Hill, Inc.</u>, 809 F.2d 223, 226 (3d Cir.1987). The case law provides some assistance in determining that injury which is irreparable under this standard. "The word irreparable connotes 'that which cannot be repaired, retrieved, put down again, atoned for ...'." <u>Acierno v. New Castle County</u>, 40 F.3d 645, 653 (3d Cir.1994) (citations omitted). Additionally, "the claimed injury cannot merely be possible, speculative or remote." <u>Dice v. Clinicorp, Inc.</u>, 887 F.Supp. 803, 809 (W.D.Pa.1995). An injunction is not issued "simply to eliminate the possibility of a remote future injury ..." <u>Acierno</u>, 40 F.3d at 655 (citation omitted).

<u>Messner</u>, 2009 WL 1406986, at *4 .

Furthermore, it is well-settled that "[t]he purpose of a preliminary injunction is to preserve the *status quo*, not to decide the issues on their merits." <u>Anderson v. Davila</u>,

125 F.3d 148, 156 (3d Cir. 1997). Therefore, in a case such as this, where the inmate-"Plaintiff's request for immediate relief in his motion for preliminary injunction necessarily seeks resolution of one of the ultimate issues presented in [the] . . . Complaint, . . . [the] Plaintiff cannot demonstrate that [s]he will suffer irreparable harm if he is not granted a preliminary injunction, because the ultimate issue presented will be decided either by this Court, upon consideration of Defendants' motion to dismiss, or at trial. As a result, Plaintiff's motion for preliminary injunction should be denied." Messner, 2009 WL 1406986, at *5.

In assessing a motion for preliminary injunction, the court must also consider the possible harm to other interested parties if the relief is granted. Kershner, 670 F.2d at 443. Finally, a party who seeks an injunction must show that the issuance of the injunctive relief would not be adverse to the public interest. Emile, 2006 WL 2773261, at * 6 (citing Dominion Video Satellite, Inc. v. Echostar Corp., 269 F.3d 1149, 1154 (10th Cir. 2001)).

### B.     Kelly's Requests For Injunctive Relief Should Be Denied

Judged against these exacting standards, in its current form, Kelly's motion for injunctive relief fails. At the outset, Kelly cannot meet the first element for such injunctive relief since he cannot show a reasonable likelihood of success on the merits of his claims. Indeed, we note that we have recommended that Kelly not even be

permitted to proceed with this lawsuit *in forma pauperis* due to his extensive history of frivolous and feckless litigation. This recommendation, which may effectively preclude consideration of Kelly's current claims, constitutes a substantial hurdle for Kelly in showing any likelihood of success on the merits.

Moreover, entirely aside from this threshold obstacle, Kelly cannot show a likelihood of success on many of his specific claims or prayers for relief. For example, to the extent that Kelly wishes to expunge his disciplinary records he must make an exacting showing. It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Therefore, a substantive attack on the sufficiency of the evidence in a disciplinary hearing must meet a demanding legal standard to succeed. A prison disciplinary determination comports with due process if it is based on "some evidence." See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board"). This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence. See id. at 455; Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989). Therefore, it is well settled that these disciplinary

decisions are entitled to considerable deference by a reviewing court and must be upheld whenever there is "some evidence" to support the decision. Hill, 472 U.S. at 457; Elkin v. Fauver, 969 F.2d 48 (3d Cir.1992); Thompson v. Owens, 889 F.2d 500 (3d Cir. 1989); Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); Freeman v. Rideout, 808 F.2d 949, 955 (2d Cir. 1986).

Thus, in this setting the "function [of the court] is to determine whether there is some evidence which supports the decision of the [hearing officer]." Freeman, 808 F.2d at 954. As the Supreme Court has observed, the "some evidence" standard is a highly deferential standard of review and:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-456.

Applying this deferential standard, once the reviewing court determines there is "some evidence" to support the disciplinary finding, the court must reject the evidentiary challenge by the petitioner and uphold that finding. Griffin v. Spratt, 969 F.2d 16, 22 (3d Cir. 1992); Thompson, 889 F.2d 501; Freeman, 826 F.2d at 954. In practice, courts have rarely condemned correctional disciplinary decisions as being wholly lacking in evidentiary support, and have frequently concluded that disciplinary findings are supported by the requisite degree of proof . See e.g., Fiore v. Lindsay, 336

F. App'x 168 (3d Cir. 2009)(upholding disciplinary decision); <u>Macia v. Williamson</u>, 219 F. App'x 229 (3d Cir. 2007)(same); <u>Reynolds v. Williamson</u>, 197 F. App'x 196 (3d Cir. 2006)(same); <u>Levi v. Holt</u>, 193 F. App'x 172 (3d Cir. 2006)(same); <u>Sinde v. Gerlinski</u>, 252 F. Supp. 2d 144 (M.D.Pa. 2003)(same). Here Kelly has not shown that he can meet this burden of proof with respect to the numerous disciplinary citations lodged against him. Therefore, he has not shown a likelihood of success on this prayer for relief.

Likewise, Kelly's demand for release on parole is also likely unavailing. In fact, federal courts have routinely rejected suggestions by state prisoners that discretionary parole denials offend due process. <u>See, e.g.</u>, <u>Williams v. Pa. Bd. of Probation and Parole</u>, No. 07-3158, 2008 WL 5120773 (E.D. Pa. Oct. 31, 2008); <u>Walls v. Attorney General</u>, No. 06-1598, 2007 WL 4190790 (W.D. Pa. Nov. 26, 2007); <u>Zuniga v. Pa. Bd. of Probation and Parole</u>, No. 05-5517, 2007 WL 1002179 (E.D. Pa. March 29, 2007); <u>Anderson v. Pa. Bd. of Probation and Parole</u>, No. 05-00163, 2006 WL 1149233 (M.D. Pa. April 26, 2006); <u>Bonsall v. Gillis</u>, 372 F.Supp. 2d 805 (M.D. Pa. 2005); <u>Bachman v. Jeffries</u>, 488 F.Supp. 107 (M.D. Pa. 1980). These cases are grounded upon several basic tenets of constitutional law. At the outset, these cases acknowledge that it is well-settled that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." <u>Greenholtz v. Inmates</u>

of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979); see also Rauso v. Vaughn, 79 F. Supp. 2d 550, 551 (E.D. Pa.2000)(the federal constitution does not create an entitlement to parole).These cases all further recognize that the Pennsylvania parole statute does not create a liberty interest in the right to be paroled. Burkett v. Love, 89 F.3d 135, 139 (3d Cir.1996); Rodgers v. Parole Agent SCI-Frackville, 916 F. Supp. 474, 476-77 (E.D. Pa. 1996); McCrery v. Mark, 823 F.Supp. 288, 294 (E.D. Pa. 1993). Rather, as the Pennsylvania Supreme Court has aptly noted, under state law: "It is undisputed that [an inmate] does not have a clear legal right to the grant of parole, nor does the board have a corresponding duty to grant the same." Coady v. Vaughn, 770 A.2d 287, 289(2001); see also Rogers v. Pa. Bd. of Probation and Parole, 724 A.2d 319, 323 (Pa. 1999).

Since a discretionary decision of the Parole Board denying an inmate early parole does not implicate any constitutionally protected liberty interest, the scope of federal judicial review of these decisions is necessarily quite limited. In the absence of a specific, articulated constitutional right to parole, the role of this Court in reviewing a state parole denial has been defined by the United States Court of Appeals for the Third Circuit in the following terms: "[E]ven if a state statute does not give rise to a liberty interest in parole release under Greenholtz, once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause

in not being denied parole for arbitrary or constitutionally impermissible reasons." Block v. Potter, 631 F.2d 233, 236 (3d Cir.1980); Bonsall v. Gillis, 372 F.Supp.2d 805, 807 (M.D. Pa. 2005)(quoting Block). However, when ensuring that state parole denials are not motivated by arbitrary or constitutionally impermissible reasons, it is clear that "federal courts, . . . are not to 'second-guess parole boards', and the requirements of substantive due process are met if there is some basis for the challenged decision." Hunterson v. DiSabato, 308 F.3d 236, 246 (3d Cir. 2002). See also Coady v. Vaughn, 251 F.3d 480, 487 (3d Cir. 2001)(held, federal courts are not authorized by the due process clause to second-guess parole boards and the requirements of substantive due process are met if there is some basis for the challenged decision). Moreover, the "relevant level of arbitrariness required to find a substantive due process violation involves not merely action that is unreasonable, but, rather, something more egregious, which we have termed at times 'conscience shocking' or 'deliberately indifferent.'" Hunterson, 308 F.3d at 247. Kelly has made no such showing here.

Furthermore, Kelly's demand for single cell housing and other housing accommodations is also unlikely to succeed. In this regard, we note that in the past inmates have frequently sought preliminary injunctive relief similar to that demanded here, compelling prison officials to provide them with specific accommodations and services during the pendency of a lawsuit. Yet, such requests, while often made, are

rarely embraced by the courts. Instead, courts have routinely held that prisoner-plaintiffs are not entitled to use a motion for injunctive relief as a vehicle to compel prison officials to provide them with specific relief and services pending completion of their lawsuits. Thus, courts have rejected inmate requests for injunctions mandating specific treatment and conditions of confinement for prisoners. See, e.g., Messner v. Bunner, No. 07-112E, 2009 WL 1406986 (W.D.Pa. May 19, 2009)(denying inmate preliminary injunction); Brown v. Sobina, No. 08-128E, 2008 WL 4500482 (W.D.Pa. Oct. 7, 2008)(denying inmate preliminary injunction); Emile v. SCI-Pittsburgh, No. 04-974, 2006 WL 2773261, *6 (W.D.Pa. Sept. 24, 2006) (denying inmate preliminary injunction).  In particular, this Court has expressly rejected claims by inmates that double-celling prisoners in this facility violates the Eighth Amendment, stating that:

> It is well-settled that double celling inmates is not *per se* unconstitutional. Rhodes, 452 U.S. at 348. See also Harrison v. Bledsoe, Civ. No. 1:09-cv-01600, 2010 WL 186804, at *6 (M.D.Pa. Jan. 13, 2010) (finding no Eighth Amendment claim where the plaintiff alleges he is double-celled for twenty-three hours a day in SMU and that such double-celling leads to tension and stress); Henry v. Wilson, Civ. No. 2:05-cv-648, 2007 WL 2746717, at *5 (W.D.Pa. Sept. 17, 2007) (denying Eighth Amendment claim where the plaintiff fails to produce any evidence that his conditions in a double cell deprived him of any basic human need). Double celling may, however, amount to cruel and unusual punishment if combined with other adverse conditions. Nami v. Fauver, 82 F.3d 63, 67 (3d Cir.1996). Considerations that are relevant in determining if double celling violates the Eighth Amendment "include the length of confinement, the amount of time prisoners spend in their cells each day, sanitation, lighting, bedding, ventilation, noise, education and rehabilitation programs, opportunities for activities outside the cells, and the repair and

functioning of basic physical facilities such as plumbing, ventilation, and showers." Id.  Here, [plaintiff] alleges that he has been forced to live in a cell that is too small for two inmates. However, he does not allege that he was singled out for the double-celling or that his health or life is or was endangered by the condition. Further, he has not shown that he suffered a substantial injury from another inmate or facts from which it can be reasonably inferred that he is in imminent danger of substantial injury as a result of being double celled. Since the court has already determined that the other conditions complained of do not deprive [plaintiff] of "the minimal civilized measure of life's necessities," Griffin v. Vaughn, 112 F.3d at 709, nor indicate that prison officials "knew of and disregarded an excessive risk to [Mitchell's] health or safety," Farmer, 511 U.S. at 837, [plaintiff's] disappointment here with the double-celling practice in the SMU does not amount to cruel and unusual punishment.

Mitchell v. Dodrill, 696 F.Supp.2d 454, 468 -469 (M.D.Pa. 2010). See also, Hunter v. Bledsoe, No. 10-927, 2010 WL 3154963 (M.D. Pa. Aug. 9, 2010)(held SMU inmate has no constitutional right to single-cell status). In light of this settled caselaw these prayers for relief also fail.

Nor can Kelly show a likelihood of success on the merits of his demand for special access to legal materials. In this regard, state inmates in Pennsylvania have in the past often invited federal courts to entertain preliminary injunctions directing their jailers to allow them greater access to legal materials. Yet, these requests, while frequently made, have rarely been embraced by the courts. See, e.g., Kershner v. Mazurkiewicz, supra; Edmonds v. Sobina, 296 F.App'x 214, 216 n. 3 (3d Cir. 2008); Barnes v. Quattlebaum, No. 08-2197, 2009 WL 678165 (D.S.C. March 12, 2009); Clay

v. Sobina, No. 06-861, 2007 WL 950384 (W.D.Pa. March 26, 2007); Wesley v. Vaughn, No. 99-1228, 2001 WL 1391254 (E.D.Pa. Nov. 7, 2001). Instead, these courts have repeatedly upheld as reasonable  prison policies concerning access to, and the storage of, legal materials finding that these policies do not unduly infringe upon inmates' rights to petition the courts. Id. Given this case law, Kelly has failed to show a likelihood of success on the merits that prison officials violate his rights when they provide him legal materials in accordance with their own policies and procedures.

Finally, Kelly likely cannot prevail on any of his prison transfer claims since it is well established that the United States Constitution does not confer any right upon an inmate to any particular custody or security classification. Moody v. Daggett, 429 U.S. 78, 88 (1976); Montanye v. Haymes, 427 U.S. 236, 242 (1976). Thus, inmates do not have a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed ... and is not otherwise violative of the Constitution." Id. Similarly, it has long been recognized that prison transfer decisions, standing alone, do not constitute cruel and unusual punishment in violation of the Eighth Amendment to the Constitution. See, e.g., Hassain v. Johnson, 790 F.2d 1420 (9th Cir. 1986); Serrano v. Torres, 764 F.2d 47 (1st Cir. 1985). Even inmate transfers to facilities far from their homes do not rise to the level of cruel and unusual punishment. See, e.g., Gov't of Virgin Island v. Gereau, 592 F.2d 192 (3d Cir. 1979)(transfer from Virgin Islands to

mainland); <u>Rodriguez-Sandoval v. United States</u>, 409 F.2d 529 (1ˢᵗ Cir. 1969)(transfer from Puerto Rico to Atlanta). In short, it is well-settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment. <u>See</u> <u>Olim v. Wakinekona</u>, 461 U.S. 238, 245 (1983); <u>Meachum v. Fano</u>, 427 U.S. 215 225 (1976); <u>Montanye</u>, 427 U.S. at 242; <u>Bulger v. U.S. Bureau of Prisons</u>, 65 F.3d 48 (5thCir. 1995); <u>Marchesani v. McCune</u>, 531 F.2d 459 (10th Cir.), <u>cert.denied</u>, 429 U.S. 846 (1976). Simply put, as a legal matter Kelly has no constitutional right to choose his prison. Therefore, he may not use a motion for preliminary injunction as a vehicle to choose his place of confinement, or direct a prison transfer, at the outset of this litigation. Therefore his motion for preliminary injunction should be denied.

Beyond this failure to demonstrate a likelihood of success on the merits of these various claims, Kelly's motion for injunctive relief is wanting in several other respects. For example, the motion does not address the demanding standards prescribed by caselaw and statute for such injunctions, in that the plaintiff does not present a prayer for relief which is "narrowly drawn, extend[s] no further than necessary to correct the harm . . ., and [is] the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2). Quite the contrary, this prayer for relief is cast broadly and would invite the court to intervene in a host of prison custody issues in a particularly inappropriate way.

In addition, Kelly's proposed preliminary injunction would require a wide array of non-party prison officials to take affirmative steps to address his demands.  To the extent that Kelly seeks to enjoin non-parties in this litigation it is clear that: "[a] non-party cannot be bound by the terms of an injunction unless the non-party is found to be acting 'in active concert or participation' with the party against whom injunctive relief is sought. Fed.R.Civ.P. 65(d)." Elliott v. Kiesewetter,  98 F.3d 47, 56 (3d Cir. 1996). Since Kelly has not shown an active concert of unlawful action by these non-parties, he may not enjoin them to provide him with these special services.

Additionally, it is well-settled that "[t]he purpose of a preliminary injunction is to preserve the *status quo*, not to decide the issues on their merits." Anderson v. Davila, 125 F.3d 148, 156 (3d Cir. 1997). Therefore, in a case such as this, where the inmate-"Plaintiff's request for immediate relief in his motion for preliminary injunction necessarily seeks resolution of one of the ultimate issues presented in [the] . . . Complaint, . . . [the] Plaintiff cannot demonstrate that he will suffer irreparable harm if he is not granted a preliminary injunction, because the ultimate issue presented will be decided either by this Court, upon consideration of Defendants' motion to dismiss, or at trial. As a result, Plaintiff's motion for preliminary injunction should be denied." Messner, 2009 WL 1406986, at *5. In this case, as we view it, much of the preliminary injunctive relief sought by Kelly directly relates to the merits of the ultimate issues in this lawsuit. Since the ultimate issues in this lawsuit are inextricably intertwined with

the assertions in this motion for injunctive relief, a ruling on the motion might be perceived as speaking in some way to the ultimate issues in this case. In such instances we should refrain from prematurely granting such relief.

Moreover, while we do not in any way diminish Kelly's complaints, we find that this inmate has not shown an immediate irreparable harm justifying a preliminary injunction. See e.g., Rivera v. Pennsylvania Dep't. Of Corrections, 346 F. App'x 749 (3d Cir. 2009)(denying inmate request for injunction); Rush v. Correctional Medical Services, Inc., 287 F. App'x 142 (3d Cir. 2008)(same).In this regard, when considering this benchmark standard for a preliminary injunction, it is clear that: "Irreparable injury is established by showing that Plaintiff will suffer harm that 'cannot be redressed by a legal or an equitable remedy following trial.' Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir.1989) ('The preliminary injunction must be the only way of protecting the plaintiff from harm')." Messner, 2009 WL 1406986, at *4. In this context, the word irreparable has a specific meaning and connotes "that which cannot be repaired, retrieved, put down again, [or] atoned for ...." Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir.1994) (citations omitted). Thus, an injunction will not issue "simply to eliminate the possibility of a remote future injury ..." Acierno, 40 F.3d at 655 (citation omitted). Therefore, where an inmate-plaintiff is alleging that damages may be an adequate remedy, a preliminary injunction is often not appropriate since the inmate has not shown that he faces immediate, *irreparable* harm. Rivera v.

Pennsylvania Dep't. Of Corrections, 346 F.App'x 749 (3d Cir. 2009); Rush v. Correctional Medical Services, Inc., 287 F.App'x 142 (3d Cir. 2008).

Finally, we also note that granting this injunctive relief, which would effectively have the federal courts making *ad hoc*, and individual, decisions concerning the treatment of a single prisoner, could harm both the defendants' and the public's interest. In this prison context, the defendants' interests and the public's interest in penological order could be adversely effected if the Court began dictating the treatment for the plaintiff, one inmate out of thousands in the state prison system. Therefore, consideration of "whether granting preliminary relief will result in even greater harm to the nonmoving party; and . . . whether granting the preliminary relief will be in the public interest," Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994), also weighs heavily against Kelly in this case.

In sum, in this case Kelly has not demonstrated a likelihood of success on the merits, and has not shown that he suffers an irreparable harm. Moreover, this motion is procedurally flawed, and granting this extraordinary relief could harm the public's interest and the interests of the opposing parties. Therefore, an assessment of the factors which govern issuance of such relief under Rule 65 of the Federal Rules of Civil Procedure weighs against Kelly and compels us to recommend that the court deny this motion.

## III. **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's motion for a temporary restraining order and preliminary injunction pursuant to Rule 65(b) of the Federal Rules of Civil Procedure (Doc. 4) be denied.    T h e parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified    proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 11th day of December, 2014.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge