# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLEN KELLY, | : | Civil No. 1:14-CV-2322 |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | (Chief Judge Conner) |
| | : | |
| J.T. MERRELL, et al., | : | (Magistrate Judge Carlson) |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.      Statement of Facts and of the Case

In its present form, this case presents a striking circumstance.  This is *pro se*
civil rights action was initially brought by the plaintiff, a state prisoner, through the
filing of a complaint on December 8, 2014.  (Doc. 1.)  In March of 2016, the
defendants filed a motion to dismiss this complaint, which, in part, cited Kelly for a
profound procedural failing, a failure to exhaust his administrative remedies within the
prison system prior to bringing this action.  (Doc. 55.)  Cited for this procedural
shortfall, Kelly has three times sought an extension of time in which to respond to this
motion. (Docs. 58, 62, 66.)  We granted these motions, most recently directing Kelly
to respond to this motion on or before September 12, 2016.  (Doc. 14.)  We also
warned Kelly, in clear and precise terms, that: "It is now well-settled that 'Local Rule
7.6 can be applied to grant a motion to dismiss without analysis of the complaint's

sufficiency "if a party fails to comply with the [R]ule after a specific direction to comply from the court." Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (1991).' Williams v. Lebanon Farms Disposal, Inc., No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010). Therefore, a failure to comply with this direction may result in the motion being deemed unopposed and granted." (Doc. 67.)

Kelly has now failed to comply with this deadline. Thus, a plaintiff who is alleged to have neglected one set of procedural rules, his administrative exhaustion responsibilities, has now failed to comply with another set of procedural requirements by responding to a defense motion which cites him for his earlier procedural default. Given this complete, continuing, and on-going, inaction with respect to the motion to dismiss, we will deem the motion ripe for resolution. For the reasons set forth below, we recommend that the motion to dismiss, (Doc. 55.), be granted.

## II. Discussion

### A. Under The Rules of This Court This Motion to Dismiss Should Be Deemed Unopposed and Granted

At the outset, under the Local Rules of this Court the plaintiff should be deemed to concur in this motion to dismiss, since the plaintiff has failed to timely oppose the motion, or otherwise litigate this case. This procedural default completely frustrates and impedes efforts to resolve this matter in a timely and fair fashion, and under the Rules of this Court warrants dismissal of the action, since Local Rule 7.6 of the Rules

of this Court imposes an affirmative duty on the plaintiff to respond to motions and

provides that

> Any party opposing any motion, other than a motion for summary
> judgment, shall file a brief in opposition within fourteen (14) days after
> service of the movant's brief, or, if a brief in support of the motion is not
> required under these rules, within seven (7) days after service of the
> motion. *Any party who fails to comply with this rule shall be deemed not
> to oppose such motion.* Nothing in this rule shall be construed to limit
> the authority of the court to grant any motion before expiration of the
> prescribed period for filing a brief in opposition. A brief in opposition
> to a motion for summary judgment and LR 56.1 responsive statement,
> together with any transcripts, affidavits or other relevant documentation,
> shall be filed within twenty-one (21) days after service of the movant's
> brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to

dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with

the [R]ule after a specific direction to comply from the court.' Stackhouse v.

Mazurkiewicz, 951 F.2d 29, 30 (1991)." Williams v. Lebanon Farms Disposal, Inc.,

No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010). In this case the

plaintiff has not complied with the local rules, or our prior orders, by filing a timely

response to this motion. Therefore, these procedural defaults by the plaintiff compel

the Court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal
> Rules are meant to be applied in such a way as to promote justice. *See*
> Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve
> cases on their merits whenever possible. However, justice also requires

that the merits of a particular dispute be placed before the court in a timely fashion ....” McCurdy v. American Bd. of Plastic Surgery, 157 F.3d 191, 197 (3d Cir.1998).

Lease v. Fishel, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system.  A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are repeatedly breached, “would actually violate the dual mandate which guides this Court and motivates our system of justice:  ‘that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion’.” Id.  Therefore, we are obliged to ensure that one party’s refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

These basic tenets of fairness apply here.  In this case, the plaintiff has failed to comply with Local Rule 7.6 by filing a timely response to this dispositive motion.  This failure now compels us to apply the sanction called for under Rule 7.6 and deem the plaintiff to not oppose the motion.

## B.    Dismissal of this Case Is Also Warranted Under Rule 41

Beyond the requirements imposed by the Local Rules of this Court, Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for

failure to prosecute, stating that: "If the plaintiff fails to prosecute or to comply with

these rules or a court order, a defendant may move to dismiss the action or any claim

against it." Fed. R. Civ. P. 41(b). Decisions regarding dismissal of actions for failure

to prosecute rest in the sound discretion of the Court, and will not be disturbed absent

an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir.

2002)(citations omitted). That discretion, however, while broad is governed by certain

factors, commonly referred to as Poulis factors. As the United States Court of Appeals

for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in
> dismissing a case for failure to prosecute], we evaluate its balancing of
> the following factors: (1) the extent of the party's personal responsibility;
> (2) the prejudice to the adversary caused by the failure to meet
> scheduling orders and respond to discovery; (3) a history of dilatoriness;
> (4) whether the conduct of the party or the attorney was willful or in bad
> faith; (5) the effectiveness of sanctions other than dismissal, which
> entails an analysis of alternative sanctions; and (6) the meritoriousness
> of the claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d
> 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to

determine whether a district court has abused its discretion in dismissing for failure

to prosecute." Lopez v. Cousins, 435 F. App'x 113, 116 (3d Cir. 2011)(quoting

Briscoe v. Klem, 538 F.3d 252 (3d Cir. 2008)) Therefore, "[i]n balancing the Poulis

factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether

a district court abused its discretion in dismissing a plaintiff's case. Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir.1992)." Briscoe v. Klaus, 538 F.3d at 263. Consistent with this view, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263. Moreover, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction. See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the Poulis factors weighs heavily in favor of dismissing this action. At the outset, a consideration of the first Poulis factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the plaintiff, who has repeatedly failed to abide by court orders, and has otherwise neglected to litigate this case, or respond to defense motions.

Similarly, the second Poulis factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action. Indeed, this

factor–the prejudice suffered by the party seeking sanctions–is entitled to great weight

and careful consideration. As the United States Court of Appeals for the Third Circuit

has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 873-74 (3d Cir.1994) (internal quotation marks and citation omitted). Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." Id. at 874 (internal quotation marks and citations omitted). . . . However, prejudice is not limited to "irremediable" or "irreparable" harm. Id.; see also Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir.2003); Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683, 693-94 (3d Cir.1988). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." Ware, 322 F.3d at 222.

Briscoe v. Klaus, 538 F.3d at 259-60.

In this case the plaintiff's failure to litigate this claim or comply with court

orders now wholly frustrates and delays the resolution of this action. In such

instances, the defendants are plainly prejudiced by the plaintiff's continuing inaction

and dismissal of the case clearly rests in the discretion of the trial judge. Tillio v.

Mendelsohn, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings

compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007)

(failure to comply with discovery compels dismissal); Azubuko v. Bell National

Organization, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint

prejudices defense and compels dismissal).

When one considers the third Poulis factor-the history of dilatoriness on the

plaintiff's part–it becomes clear that dismissal of this action is now appropriate.  In

this regard, it is clear that "'[e]xtensive or repeated delay or delinquency constitutes

a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness

in complying with court orders.' Adams, 29 F.3d at 874." Briscoe v. Klaus, 538 F.3d

at 260-61 (some citations omitted).  Here, the plaintiff has consistently failed to

respond to a motion to dismiss for the past six  months.  The plaintiff has also failed

to timely file pleadings, and has not complied with orders directing him to take action

in this case.  Thus, the plaintiff's conduct displays "[e]xtensive or repeated delay or

delinquency [and conduct which] constitutes a history of dilatoriness, such as

consistent non-response . . . , or consistent tardiness in complying with court orders."

Adams, 29 F.3d at 874.

The fourth Poulis factor–whether the conduct of the party or the attorney was

willful or in bad faith–also cuts against the plaintiff in this case.  In this setting we

must assess whether this conduct reflects mere inadvertence or willful conduct, in that

it involved "strategic," "intentional or self-serving behavior," and not mere

negligence.  Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund, 29 F.3d 863,

875 (3d Cir.1994). At this juncture, when the plaintiff has failed to comply with instructions of the Court directing the plaintiff to take specific actions in this case, and has violated the Local Rules, the Court is compelled to conclude that the plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the Court's instructions.

While Poulis also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing Poulis agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative. See, e.g., Briscoe v. Klaus, 538 F.3d 252, 262-63 (3d Cir. 2008); Emerson, 296 F.3d at 191. This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion. In any event, by entering our prior order, and counseling the plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail. The plaintiff still declines to obey court orders, and otherwise ignores his responsibilities as a litigant. Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the Court.

Finally, under <u>Poulis</u> we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims. In our view, however, consideration of this factor cannot save this particular plaintiff's claims, since the plaintiff is now wholly non-compliant with his obligations as a litigant. The plaintiff cannot refuse to address the merits of his claims, and then assert the untested merits of these claims as grounds for denying a motion to sanction him. Furthermore, it is well-settled that " 'no single <u>Poulis</u> factor is dispositive,' <u>Ware</u>, 322 F.3d at 222, [and it is] clear that 'not all of the <u>Poulis</u> factors need be satisfied in order to dismiss a complaint.' <u>Mindek</u>, 964 F.2d at 1373." <u>Briscoe v. Klaus</u>, 538 F.3d at 263. Therefore, the untested merits of the non-compliant plaintiff's claims, standing alone, cannot prevent imposition of sanctions.

In any event, as discussed below, many of Kelly's claims appear to fail on their merits, yet another factor which favors dismissal of this case. The apparent flaws in these claims are discussed separately below.

### C. <u>Many of Kelly's Claims Fail on Their Merits</u>

Finally, a merits analysis of Kelly's claims reveals that many of these claims also appear to fail as a matter of law. As we have previously observed, this case presents an extraordinary circumstance. The plaintiff, a state prisoner, has sued his jailers, alleging that they have violated his constitutional rights. However, it appears that the plaintiff has indulged in a profound procedural failure, a failure to exhaust

administrative remedies within the prison system before filing this complaint. Having

been cited by the defendants for this profound procedural shortcoming, the plaintiff

has compounded this error by failing to respond to the motion to dismiss. Thus, a

plaintiff who is alleged to have ignored one set of important procedural rules, has now

discounted a second set of procedural benchmarks.

In this case the plaintiff's failure to timely pursue these administrative

remedies–which is undisputed on this record– has substantive significance for the

plaintiff since the Prison Litigation Reform Act provides that "[n]o action shall be

brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other

Federal law, by a prisoner confined in any jail, prison, or other correctional facility

until such administrative remedies as are available are exhausted." 42 U.S.C. §

1997e(a). Section 1997e's exhaustion requirement applies to a wide-range of inmate

complaints, including damages complaints like those made here grounded in alleged

violations of the Eighth Amendment. See Spruill v. Gillis, 372 F.3d 218 (3d Cir.

2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000). While this exhaustion

requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced

by the courts. This rigorous enforcement is mandated by a fundamental recognition

that § 1997e's exhaustion requirement promotes important public policies. As the

United States Court of Appeals for the Third Circuit has noted:

Courts have recognized myriad policy considerations in favor of exhaustion requirements. They include (1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process. Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in § 1997e(a). ... [A] a comprehensive exhaustion requirement better serves the policy of granting an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Moreover, "even if the complaining prisoner seeks only money damages, the prisoner may be successful in having the [prison] halt the infringing practice" or fashion some other remedy, such as returning personal property, reforming personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards. And when a prisoner obtains some measure of affirmative relief, he may elect not to pursue his claim for damages. In either case, local actors are given the chance to address local problems, and at the very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring. An across-the-board exhaustion requirement also promotes judicial efficiency. . . . Moreover, even if only a small percentage of cases settle, the federal courts are saved the time normally spent hearing such actions and multiple appeals thereto. . . . In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained. The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures. All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000)(citations omitted).

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court.

Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir. 2006).

This broad rule favoring full exhaustion admits of one, narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." Davis v. Warman, 49

F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances", Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Davis v. Warman, supra, 49 F. App'x at 368. See also Brown v. Croak, 312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000) (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and uncontradicted correctional officers impeded filing of grievance).

However, in the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the Department of Corrections policies were not clearly explained to him. Davis v.

Warman, 49 F. App'x 365, 368 (3d Cir. 2002).  Furthermore, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust.  Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003).  Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed.  Oliver v. Moore, 145 F. App'x 731 (3d Cir. 2005)(failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

Thus, in this setting, the Prison Litigation Reform Act requires that an inmate fully exhaust his administrative remedies before proceeding into federal court, an administrative exhaustion requirement which entails full compliance with grievance procedures and timelines, before he may name these individuals as defendants in a federal lawsuit.  Judged against these benchmarks, much of this complaint fails since the defendants have asserted, without contradiction by the plaintiff, that many of the matters set forth in the complaint have not been fully and properly exhausted within the prison grievance system.  This failure to exhaust is fatal to many of the claims in this case, and compels dismissal of these claims.

Likewise, to the extent that Kelly's complaint brings a constitutional challenge to DC-ADM 803, the prison policy governing payment for inmate postage, this issue

has previously been addressed by this Court, in <u>Salked v. Tennis</u>, 2006 WL 2794222

(M.D. Pa. 2006), where we addressed the policy's regulations regarding postage for

inmates and determined it does not violate an inmate's Constitutional rights.  Other

Courts have also consistently reached this same decision with respect to the provisions

of DC-ADM 803.  <u>See</u> <u>Fontroy v. Beard</u>, 559 F.3d 173 (3d Cir. 2009) (DOC officials

have shown that DC-ADM 803 is reasonably related to legitimate penological

concerns).  <u>See also</u>, <u>Hale v. Pennsylvania Department of Corrections, et al.</u>, 2010 WL

3791833 (M.D. Pa. 2010) ("because the policy set forth in DC-ADM 803 was

'reasonably related to legitimate penological interest' it passes constitutional

muster."); <u>Bundy v. Beard</u>, 924 A.2d 723 (2007) (holding "we are confident that DC-

ADM 803 provides adequate protection to inmates' constitutional rights" with respect

to its UCC provisions).  As it has already been determined that the provisions of DC-

ADM 803 do not violate an inmate's constitutional rights, Kelly has failed to state a

claim upon which relief can be granted.

In sum, then, this merits analysis reveals that many of Kelly's claims may fail

as a matter of law.  Therefore, we find that all of the <u>Poulis</u> factors call for dismissal

of this case.

## III.    Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendant's motion to dismiss (Doc. 55.) be GRANTED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 19th day of September 2016.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge